Judge Wilson, if it pleases the court, I'm Kirk Wood and I'm here today on behalf of the plaintiff, Latham Sean Bean, who is the personal representative of his deceased father, Hubert Bean. We have requested a reservation of five minutes for rebuttal. I'm joined by my colleague, Mr. Cole, who will also speak today. We are generally dividing it as to facts for me and law for Mr. Cole, but we're certainly prepared to answer any questions. We're here today on diversity jurisdiction concerning a South Carolina case law failure to warrant claim. The late fall of 2013, Hubert Bean was an active 70-year-old retiree with a mild case of atrial fibrillation. In October of that year, Dr. Rajesh Malik, his doctor, prescribed amiodarone for his non-life-threatening atrial fibrillation. Hubert picked up the prescriptions from his local pharmacist and took the 200 milligrams as required and as prescribed. He was provided a generic form of amiodarone manufactured by the defendants, Terrell and Upsher. Hubert did not receive the FDA mandated medication guide when he received his medication from the pharmacist at Walgreens and Walmart. He did not receive the warning that was included in that medication guide as directed by the FDA, nor did he receive an appropriate warning as required by South Carolina case law for inherently dangerous drugs, of which amiodarone has been identified as one. Dr. Rajesh Malik was not adequately informed as to the dangers of the drug, and he, in turn, was unable to inform Hubert. Sadly, Hubert Bean began to have a lot of problems, many of which were those problems outlined in the warning included in the medication guide. Dr. Malik was not able to inform him about these issues because he was not adequately informed as to the issues at hand. Hubert's health continued to fail, and he was admitted to McLeod Hospital in Florence, where the doctors worked to save his life. Unfortunately, the efforts of the doctors and the staff at McLeod were unsuccessful, and Hubert died on June 20, 2014, the cause of which was amiodarone toxicity. In many ways, it's not a complicated case here today with a lot of complex issues. It is simply stated a South Carolina state court failure to warn claim. You had other claims to begin with, didn't you? That's correct, Your Honor. The only one you're pursuing on appeal is the failure to warn. That's correct. Is that right? The rest of them are out of it. Absolutely. South Carolina, as do most states, recognizes the restatement second of torts, Section 388, failure to warn definition, and has supported it with stare decisis over the years. In South Carolina, a manufacturer has a duty to warn of a dangerous drug. We do, of course, recognize that there are federal regulatory schemes of concern for prescription medications. Amiodarone has been designated as an inherently dangerous drug by the FDA, and as such, 21 CFR 208 requires that a medication guide be distributed directly to the patient at each time he picks up his prescription from the retail pharmacy. The manufacturer, by FDA regulation, has a duty to ensure distribution of significant quantities of medication guides so that that guide, with that important warning- So with respect to the preemption claim, what is your argument that this is not preempted by the FDA regulations? Your Honor, we believe that Buckman and its progeny recognize a parallel duty. In other words, you can have a state court failure to warn claim, you can have a parallel requirement for a federal warning, but they can travel together as long as they don't intersect in conflict. Hubert was not warned as required by South Carolina law. The warning in the guide would have been adequate warning had it been provided. With respect to the failure to warn claim, the pharmaceutical company can interpose a learned intermediary defense, as I understand it under South Carolina law. The basic defense being that the duty here, which is a key concept in tort, that the duty of the pharmaceutical company is simply to warn the pharmacist or the physician. And then from there on, it's the duty of the pharmacist or the physician to warn the patient. So if we agree with you that the failure to warn claim is not preempted, that still leaves intact the defendant's ability to raise a learned intermediary defense and say that we warned the parties whom we had a duty to warn. Yes, Your Honor. I agree. The learned intermediary doctrine does come into play. But it's our contention, and we alleged in our complaint, that the doctor must be adequately informed, he must be adequately warned, and he must not receive contradictory information, or his ability to warn is nonexistent. That's where I'm having a little trouble, because I'm not sure that it seems to be something of a moving target. I'm not sure exactly where the defendant defaulted in its duty to,  but I'm not sure how the defendant defaulted in its duties to warn the learned intermediary. Perhaps your colleague can take that up. Maybe it's time to hear from Mr. Cole on that. It clearly is, Your Honor. Thank you. Okay. May it please the Court? Mr. Cole, I found your complaint a bit vague and imprecise about how the pharmaceutical company had failed in its duty to warn a learned intermediary. Yes, Your Honor, and I would like to address that with the Court. In this Court's decision in Brooks v. Medtronic, in which this Court recognized that the learned intermediary doctrine would apply under South Carolina law ordinarily, the Court said that if the manufacturer gives an adequate warning to the physician, then it has no further duty to warn the patient. We would argue, and we pleaded and argued at the district court level, that the manufacturer did not adequately warn Mr. Malik. And to clarify that point a little bit, although the FDA warnings are adequate, we also alleged that the defendants misled Dr. Malik into thinking that amiodarone was safe to prescribe for atrial fibrillation. Now... Your claim that the warnings were inadequate or that they were never conveyed or that they never reached the hand of the learned intermediary, those are two different things, and I'm wondering... Yes, Your Honor, and I would like to clarify. So I found a very good illustrative case by the South Carolina Supreme Court that illustrates... Would it be possible for you to just stay with the facts for just a minute? Yes. Because I had the same sort of... I thought I heard you say that the FDA warnings were adequate. Yes, Your Honor, and this is what I'm going to explain with this illustration from this court. Yes, Your Honor. So in the Curcio decision, which is a South Carolina Supreme Court case... I'm just going to give the citation here. It is 585SE2D272. And I'm going to use this case just as an illustration by way of analogy. It's not in the brief, but it serves to illustrate our point. In that case, the plaintiff was working on a loader engine with the battery in the case. And it was undisputed in that case. They said there is no question that the defendant warned against working on the loader's engine without disconnecting the batteries first, and that had the batteries been disconnected, the accident would not have occurred. But in other parts of the warning, in other parts of the overall warning, the warning indicated that it was okay to work on the engine with the battery connected. And what the Supreme Court said in that case was that the issue before the court is whether there is any evidence that the warnings as a whole were inadequate. And so, yes, while the FDA warnings on their own would have been an adequate warning, we also alleged that, yes. No, I'm just, it doesn't seem analogous because what I, or at least for me, and forgive me if I'm being slow about this, but the purpose of the learned intermediary doctrine is that there is this, it's just the basic torque concept of an intervening cause, that there is an act that would staunch, that there is an intervening act that would staunch liability. And if the FDA warnings were adequate, the example you were giving suggested that as a whole they were adequate. I'm not making that connection. Because your co-counsel said that the doctor wasn't aware of, which is also a little troubling that a doctor would prescribe a drug that, without having performed any research on that drug. But nevertheless, I'm still having a bit of trouble making the connection. Yes, Your Honor. Between the adequacy of the FDA warning, which you've acknowledged, and its failure, where did the breakdown occur? So the overall warning, in addition to the FDA warning, the manufacturers gave additional warnings to the doctor that were contradictory, that said that it was safe to prescribe. So the overall warning, going beyond just the FDA warnings, the overall warnings that the manufacturer gave to the doctor were contradictory, and therefore under South Carolina law, they were not adequate. On the joint appendix, page 34, we said that, Plaintiff and or his physicians reasonably relied on defendant's representation that amiodarone was not only appropriate for the treatment of atrial fibrillation, but was also an appropriate first-line drug used in its treatment of this condition. And this is in our negligent failure to warn cause of action. And so the argument is that the overall warnings that the manufacturer gave to the doctor go beyond just what's in the FDA warning. They gave an additional warning that they were not supposed to give, and that additional warning rendered the overall warnings inadequate. Normally, a failure to warn claim addresses the inadequacy of a warning and things that need to be, warnings need to be added. This is kind of a reverse twist, I must say, because here you're saying, well, there should be things that were subtracted, and I'm not sure exactly what. But I thought this was a fairly standard warning that had been out for this particular medication for a very long time, and that the basis of the warning was the risk of pulmonary toxicity, and that that was in a standard warning and in a black box warning. And it, as far as I'm able to gather, the risk of pulmonary toxicity was made plain. And that they would, the risk would apply to any patient taking this, regardless of the particular heart condition being treated. There is a general risk of pulmonary toxicity when this medication is used, and that's the essence of the warning. And as best I could determine, that essence of the warning was conveyed. Your Honor, we believe that the warning was inadequate because it gave contradictory information. In the FDA warnings, it says you do not prescribe for atrial fibrillation, and we believe that they, and we allege that they gave contradictory warnings. And under South Carolina law, a contradictory warning is not adequate, or a jury could find. Plaintiff, in fact, alleges that the warnings contained in the medication guide were adequate and sufficient to warn plaintiff of the dangers and risks of taking amiodarone. Yes, Your Honor. I am out of time. May I please respond to your question? Your Honor, if they did not adequately warn the doctor, they have a duty to warn the patient. And they did not provide a medication guide to the patient. And the medication guide on its own going to the patient would have been sufficient to warn the patient. But they gave contradictory warnings to the doctor. And under South Carolina law, it's a question of fact for the jury to determine whether the overall warning was adequate or not. Those seem to me to be two different arguments. Yes, Your Honor. If the warnings were contradictory to the doctor, why would it have been an acceptable alternative to warn the patient? Your Honor, that's actually a very good question. Can I please respond? My time is up. Or you can respond on rebuttal. I'm just – sorry. Why don't you respond on rebuttal? Well, I'm having – my basic difficulty, I'm having difficulty pinning down exactly what it is you're alleging and what contradictions and what – you know, it's something of a moving target to me. But just the concern that I had. I read through these briefs and I was just trying to say, now, what is it? What is it that's being pinpointed? I couldn't quite put my finger on it. But anyway. Would you like me to respond during rebuttal? You can address that on rebuttal if you would. Yes, Your Honor. Thank you. Well, let's – Mr. Haggerty, let's hear what you have to say about this. Thank you, Your Honor. May it please the Court. What we just heard from Beans Counsel is not – Can I just mention one thing about the preemption claim? Sure. Which is also a ground that was put on the district court. I'm having trouble going with you on the preemption business. Or just – I think it's a little tricky. For one thing, it's very broad. And it's much broader than the learned intermediary defense. And it would knock out every tort claim in this area in the – right at the heart of the state's obligations under our federal system to look out for the health and safety of patients. And so the preemption ground made me nervous because it was so broad. And it wasn't – it's sort of an implied preemption. And it wasn't – there's no express preemption provision in the statute. And so when you combine the breadth of your preemption argument with the absence of an express preemption provision, why should we go with you on what seems to me to be a rather broad theory? Your Honor, actually, the preemption argument in this case is very narrow. Their allegations are that Mr. Bean was not provided with the federally mandated medication guide. It's not, as Bean's counsel alleged, that there was a real failure to warn his doctor. It is a failure to warn him is how this case is played. Could I – well, I had that question, too, because I understood the argument to be that the appellees violated their state law duty by failing to provide medication guides. So we now seem to have drifted off into another line of argument altogether than the one I wrote down this morning. But what is the fact – is it the fact that there is a generic version here that is – and that the pharmaceutical company that produces a generic version is bound by – is not allowed to alter the warnings that are given by the non-generic, the original version? Is that because we've encountered that before? Yes, Judge Duncan. Under the Mencin and Bartlett decisions, a manufacturer of a generic drug is not permitted to deviate from the warnings of the innovator drug. And any claim in a generic drug product liability act, product liability case, that the warnings going to the doctor were inadequate is preempted under Mencin and Bartlett because the generic drug manufacturer cannot change the warnings. But going back to your question, Judge Wilkerson, why this is a very specific form of preemption. It is implied preemption. It's conflict preemption. Under the Buckman decision, the Supreme Court essentially held that if you're seeking to enforce a requirement that Congress has given to FDA, in this case, to enforce, Congress has given FDA the responsibility to regulate the sale, manufacture, distribution of pharmaceuticals. And regulations promulgated by the FDA included the medication guide regulations. And the extent that you're suing, you're seeking to- Is your warning deviating in any way from the standard FDA regs? It did not deviate in any way from the regulations. And, in fact, you could not? No, they could not, or you would be in violation of FDA regulations. So it had to be the same warning for the innovator drug? It had to be the same warning as the innovator drug. And unless you can identify a parallel duty or a parallel cause of action under state law, in this case, you would have to identify, under South Carolina law, that there was a duty to provide a medication guide to the patient. Otherwise, you're basing your cause of action on an alleged violation of federal regulations concerning medication guides. And when you do that, you're seeking a private enforcement action that has been given to FDA in which FDA is obligated to seek action if necessary. So that's why you have a conflict. The standard is, as Judge Hartwell identified, is that if the cause of action can exist or does exist in the absence of the Food, Drug, and Cosmetic Act, then it can be pursued. It is not preempted. But if it would not exist in the absence of the Food, Drug, and Cosmetic Act, then it is preempted. And that's exactly the situation we have here. This, again, is a failure to warn the patient claim. It's not a case of failure to warn the physician. And the appellant, or I'm sorry, Bean makes that very clear. At the very outset of his brief, he says, we're only appealing our medication guide failure to warn claims. Those are counts one and two of his complaint. They are not appealing, for example, their off-label promotion claims. We heard Bean's counsel talk up here about, well, the doctor received contradictory information. What they're alleging is that there was promotion of the drug to the doctor for an off-label use. Those are counts three and four of his complaint. They are not appealing Judge Hartwell's dismissal of those counts. Also, those counts are likewise preempted, those claims are preempted, because FDA regulates the promotion of prescription drugs. And there is no cause of action under South Carolina law for talking with a doctor about an off-label use. Such a cause of action does not exist. So, again, you're pursuing a cause of action only because FDA has talked about that issue or implemented regulations on that issue. There is no parallel duty or state law cause of action based on that.  Nowhere in the complaint does Bean allege that either Taro or Upshur Smith communicated directly with his doctor about any sort of off-label promotion. And, in fact, this is what he told Judge Hartwell in his opposition brief about this point. Granted, additional discovery is clearly required to develop important facts, but only a reasonable amount of common sense is required to understand that any product requires some level of promotion if it is to enter the stream of commerce. A pleading cannot rely on common sense to state a cause of action, and a pleading of this kind of nature would be a pleading sounding in fraud, which he did not plead with particularity. You're indicating that, given the FDA regulations, you had no discretion to vary from the kind of warnings that you gave, correct? That's correct. All right. But he's saying that, no, you did, in fact, deviate and vary and provide contradictory information that went beyond the FDA warnings. His whole argument, as I understand it, was that you did deviate, notwithstanding the fact that you had no discretion to deviate, and I'm wondering just what would you say in response to that? Well, I'd say in response to that, as I just mentioned, that's not pled in his complaint. There are no allegations that Upshur Smith or Taro communicated directly with his doctor about off-label uses. Also, as indicated, even if we did, that claim is preempted. But more importantly, there is no exception to the learned intermediary doctrine or to the duty to warn, even if you talk with a doctor about off-label promotion. You don't skip over the doctor and then look at the patient and see whether the patient was warned. The difficulty here for me, again, is that, you know, I just don't. The claim is not set up. I don't understand exactly what's being alleged, whether it was a failure to warn the intermediary, whether it was the content of the warning, whether it was a contradictory warning. It's a shift in target for me with all of these different counts. And so Judge Harwell makes a statement. He said, Plaintiff does not allege that the prescribing physician did not receive the medication guide. He does not allege that the prescribing physician was unaware of its contents. Does not allege that the risk of pulmonary toxicity, that he was unaware of the risk of pulmonary toxicity or lung problems possibly resulting in death. So, you know, you have things that weren't in the complaint and that now are surfacing on appeal. And it's hard, it's just very hard to pin down because I just don't think the complaint was set up right. What we have going on here is a repackaging or reformulation of claims that were not pled and that were not argued on appeal. And I'll go a step farther, Your Honor, on what they said. Bean told Judge Harwell that Bean does not allege that the contents of the labeling should have been changed. More specifically and importantly, Bean alleges that the medication guide and its warnings were not provided to him in accordance with the FDA regulations. I'll go a step further. Under their summary of arguments section, Bean says, Bean alleged that the defendants violated their South Carolina duty to adequately warn when in violation of FDA regulations they failed to provide medication guides to decedent's pharmacies adequate to ensure distribution to patients with the result the decedent did not receive one. This is not about the doctor not receiving adequate warnings. This case is about the patient not receiving warnings directly. That's what this case is about. Well, maybe it is, maybe it isn't. I mean, it seems to be about different things at different times. Well, I'm going off of what was pled in the complaint and what he told Judge Harwell and what this case is really about. If you read all the words that are in the record, this is about the medication guide. The medication guide phrase is repeated 55 times in the complaint. That's how this case was pled. What we have going on here is since this case was pled. You're saying the medication guide was dictated by FDA standards. Yes. It would not exist in the absence of the Food, Drug, and Cosmetic Act. There is no duty under South Carolina law to provide a medication guide to a patient. If you're basing your claims on the medication guide, which if you read the complaint, you read what was argued to Judge Harwell, that's exactly what they're doing. As long as the physician received the medication guide or something identical to it, that's the end of it, isn't it? That is the end of it. Did the physician receive it here? There's no allegation that the physician received the warnings. The warnings to the doctor are via the package insert. The physician received the medication guide. That's not pled. We've not done any discovery. But it's not the medication guide, Your Honor. It is the package insert. This is 12B6, right? Pardon me? This is a 12B6 appeal. This is a 12B6 appeal. And it's not the medication guide that goes to the doctor. Mr. Woods said that the physician didn't get the intermediate. It's not pled in the complaint. Actually, he said different things. I thought he said that the medication guide was adequate and the doctor received the medication guide, but there were additional warnings to the doctor overall that were contradictory. So it was overall. That's right. I wrote this down because I was having some trouble following what exactly the argument was. But it seemed to me this morning to be contradictory to what I had inferred from the brief, that the FDA warnings were adequate, that the FDA warnings made it to the doctor, but the overall warnings to doctor overall, these are my notes, were contradictory. Additional warnings rendered the overall warnings inadequate. That's correct. Which is not what is in the brief. I mean, not in the complaint. That's right. This is not a case where they're contending that the physician was not adequately warned. I go back to. If I may, what I understood from the argument this morning is that the contradictory aspect that wasn't conveyed was the off-label, the off-label cautionary, cautions about off-label usage, but those were counts three and four of their complaint which weren't appealed. Correct. So it's just a snarl. Well, Dean's counsel said some things that are absolutely wrong. He contended that additional warnings were provided to his doctor. Now, that's not pled in his complaint. That was nowhere argued to Judge Harwell, and it's absolutely not true. They say that we gave warnings we're not supposed to give. I invite the court to find that contention anywhere in the complaint, because it is not there. And Judge Williams. Was the complaint dismissed with prejudice? I'm sorry? Was the complaint dismissed with prejudice? Yes, sir. Did they ask for a right to amend? In their opposition brief, they asked for a right to amend, and Judge Harwell denied that. That's reviewed for abuse of discretion, and this court has repeatedly said that if you ask for that in the opposition brief and you don't propose a complaint or identify the facts that you say you're going to plead with an amended pleading, it's not an abuse of discretion to deny that request. Also, Judge Harwell found that any amendment would be futile. And the court, I think just this last month, said that same thing in, I think, the ACA Financial Guarantee Corp case, that it would not be an abuse of discretion for Judge Harwell to have denied that request for leave to amend. Going back to what we're talking about here, what is this claim about? I look at Bean's brief to Judge Harwell. He says the allegation is not one of adequacy or content failure to warrant, but an actual and physical negligent failure of Upshur-Smith to fulfill its federally mandated responsibility to ensure medication guides are available for distribution directly to patients with each prescription. That's what this claim is about. That's why these claims are preempted. That's why the learned intermediary doctrine is applicable here, because under South Carolina law, there is no duty to warrant directly to the patient. And I refer this court to the Brooks case, Brooks v. Medtronics. This is what this court said. Although ordinarily warnings must be given to the ultimate user of a product, a different approach has been developed for prescription drugs. It goes on to say the restriction of the duty to warrant to physicians alone in ethical drug cases stands as an exception to the general duty of manufacturers to warrant ultimate consumers in products liability cases. But it is a rule supported by sound policy considerations, because the doctor who is educated, who knows the medication, knows the patient, is in the best position to weigh the risks and benefits and decide whether this patient should take the drug. It goes on in that same decision, where it says the manufactured duty to warrant is restricted to the prescribing doctor. There is no duty under South Carolina law, whether you look at it under the learned intermediary doctrine or any other concept, to warn the patient directly in a prescription drug case. It's an exception to all the rules. And this court, in the Brooks case, essentially considered the same thing they're arguing here. Is the case at an end if the plaintiff fails to allege that the prescribing physician did not receive the medication? No, it does not end. In no situation, under no argument, if you even put in off-label promotion claims. No, but if in fact the physician received from the manufacturer the medication guide and is not alleged that he didn't receive it, is the case at an end under the learned intermediary doctrine? Well, first of all, the medication guide is for the patient. The doctor received the package insert with the medication. But they're very similar. But one's designed more for the patient. The other is designed for the doctor. So it's more technical. It's more medicine-based than what's going to the physician. But the learned intermediary doctrine provides that to state a cause of action, you have to plead that the doctor received inadequate warnings and that as approximate cause the plaintiff was injured. That's not how the case is pled. So you have to plead that. And also, I think, going back to what we're talking about here in the medication guide, in the Brooks case, this court considered this very argument. Because in the Brooks case, the plaintiff argued that Medtronic's representative was there at the time his pacemaker was going to be implanted. And he said, well, he's in close proximity to me. He's right there. He can warn me directly. That's the same thing they're arguing with the medication guide. And so in that situation the medication guide would contain the essence of the information conveyed to the prescribing physician. I mean, it may be, as you say, that the information conveyed to the prescribing physician is geared toward a professional as opposed to a patient. But basically, whether it's the prescribing information or whether it's the medication guide, the basic warning is the same, which is the risk of pulmonary toxicity for somebody taking the drug in order to treat a cardiovascular condition. That's the essence of it all. And the physician received that. I think that's fair that the medication guide captures the essence of the package insert. And I think what you also mentioned, Your Honor, about the warnings not differing for the reason you take it. The degree that they do differ is because they're targeting different audiences. The reader is different, which is why we have a learned intermediary doctrine, why you have a package insert versus a medication guide. So going back just for a moment, if I can, to the Brooks case. But when you get down to the bottom of it, it's hard to believe looking at the complaint that the prescribing physician here was unaware of the risk of pulmonary toxicity for anybody taking this medication. I mean, stripped down to its essentials, you ask was the prescribing physician aware of the risk? And as the complaint is structured, he would almost have to be. He would have to be, and that's what they pled. They said the warnings were adequate. This drug came on the market in 1985. That's, what, 39 years ago, 35 years ago. Let's hear from Judge King. Do you have any questions? Judge Duncan, do you have any questions? I want to touch really quick on his preemption argument, and then I'll jump right into the learned intermediary. In United States versus Levine, the Supreme Court said that it was odd that the dissent would rely on Bachman in a failure to warn case because failure to warn has always been the province of the states. And this is, at its heart, a state law failure to warn claim, which is a good lead-in into the learned intermediary doctrine. The problem here, and the thing that it seems counterintuitive, but it is the fact, it is the law, that the manufacturer of a generic drug has no discretion to deviate from the medication guide created by the drug innovator, just none. I mean, that's an FDA regulation. And you don't, even if you, and it doesn't seem to me that you allege that, you said this morning that the medication guide was adequate. And you argue, as I understood in your brief, that you didn't argue that it wasn't adequate. You said there was a state duty to provide, but you didn't argue the adequacy of the medication guide. The medication guide, there's just nothing to suggest that that didn't go to the doctor. And if, so where's the break? The medication guide is sacrosanct, that's sort of off the table. And with respect to duties to warn about off-label use of the medication guide, you did not appeal those counts. And I'm really trying here, but I'm not finding the grounding for what your argument seems to be today. Your Honor, I'd like to make two points very quickly. One, we haven't done discovery in this case. We don't know what the doctor received or didn't receive. We have not done discovery in this case. And as part of our, counts three and four were the fraud claims, which we decided not to appeal. But in count two, which is the negligent failure to warn claim, on the joint appendix, the second cause of action, negligent failure to warn, joint appendix, page 34, we say plaintiff and or physicians reasonably relied on defendant's representations that amiodarone was appropriate as for the treatment of atrial fibrillation. And I'd like to make one other point really quick about the broost. Are you saying that constitutes a warning to the physician or a notice to the physician? Yes, Your Honor. I'm saying that giving contradictory warnings to the physician under the- But so you say it's in the complaint. Yes, Your Honor. Yes, Your Honor. Why didn't you amend the complaint? Well- Did you ever? Is this the original complaint or is this like an amended? This is the original complaint. And we did not amend the complaint because the court did not allow us an opportunity to amend the complaint. We did not have an opportunity to amend the- Is that up in your opposition brief? Yes, Your Honor. Don't our precedents suggest that you should try to amend the complaint by filing a motion to amend the complaint and saying exactly how you would amend the complaint? And because, you know, there's a- the district judge needs to be apprised of the fact that an amendment would not be futile. I mean, there's a way to go about these things. Yes, Your Honor. Surely submit the proposed amended complaint with a motion. Yes, Your Honor. At the district court. And what I would say is that we- there is no discovery in this case. It was dismissed on a motion to dismiss. And so we do not know- Yes. I guess the point is, you know, and the Supreme Court has been pretty clear and Iqbal told me about it, is you do have to present a plausible claim for relief. And to me, I don't understand what the contradictory information was. It seems clear the physician was warned of the risk, knew of the risk. You talk a little bit about contradictory information, but what contradictory information? I mean, it's all- all I'm saying is, you know, when you bring one of these cases, there's a way to get it, but you have to set the complaint up in the correct kind of way. You just- it can't be scattershot conclusions. And that's- that's what it is. It's moving around, it's sliding around, and it just doesn't- it doesn't present a clean- it doesn't present a clean shot. It doesn't say what information was contradictory, what information was misled the physician. It just- it's- I don't know, it's- Your Honor- With all respect, I appreciate your argument, but it's just too loose. For the- well, Your Honor, we would have developed that in discovery if we had alleged that the doctor was- could not be an adequate learned intermediary. And, Your Honor, may I make one ten-second point also? Sure. The- the Brooks Court said that the reasons for the learned intermediary is that the doctor is in a better position to talk to the patient and to assess and determine when a particular patient reasonably should be informed about a risk. And this is in the brief, and you can refer to it, but we believe that there- that South Carolina would recognize an exception to the learned intermediary when- doctrine- when the FDA says that patient- a direct-to-consumer warning is necessary for safe use of the product. And this is- I know that that's a- Thank you, counsel. Thank you.
judges: J. Harvie Wilkinson III, Robert B. King, Allyson K. Duncan